1        **UNITED STATES DISTRICT COURT**

2            **DISTRICT OF NEVADA**

3    **THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING**

4

5

6    1ST MEDIA, LLC,

7            Plaintiff,

8    vs.                          **NO. 2:07-CV-1589-JCM-RJJ**

9    DOPI KARAOKE, INC.,
     et al.,                      **MOTION HEARING**
10

11           Defendants.

12    ─────────────────────────/

13        **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

14          TUESDAY, OCTOBER 14, 2008

15              11:00 A.M.

16

17    **APPEARANCES:**

18    For the Plaintiff:    WILLIAM W. FLACHSBART, ESQ.
                           ROBERT P. GREENSPOON, ESQ.
19
      For the Defendants:   ERIC A. BURESH, ESQ.
20                          W. WEST ALLEN, ESQ.
                           ABRAN KEAN, ESQ.
21                          RICHARD F. ZIEGLER, ESQ.
                           CHAD FEARS, ESQ.
22                          NANCY ALLF, ESQ.
                           JAMES LEONG, ESQ.
23

24
      Reported by:   Joy Garner, CCR 275
25                   Official Federal Court Reporter

```
 1        LAS VEGAS, NEVADA, TUESDAY, OCTOBER 14, 2008
 2                    11:00 A.M.
 3                   *    *    *
 4               P R O C E E D I N G S
 5
 6        THE CLERK:  This is the time set for
 7   the hearing of plaintiff's motion to strike and
 8   dismiss, Civil Case Number 2:07-CV-1589-JCM-RJJ,
 9   1st Media, LLC versus Dopi Karaoke, and all
10   others.  Counsel, please note your appearance for
11   the record.
12        MR. FLACHSBART:  Good morning, your
13   Honor, William Flachsbart on behalf of 1st Media.
14   With me today is my partner, Robert Greenspoon.
15        THE COURT:  All right.
16        MR. ALLEN:  Good morning, your Honor,
17   West Allen on behalf of Sony Computer
18   Entertainment American, Inc.  I also today with
19   us Mr. Eric Buresh, Mr. Abe Kean from Shook,
20   Hardy and Bacon, and from Sony, Mr. James Leong.
21        MS. ALLF:  Good morning, your Honor.
22        THE COURT:  Good morning.
23        MS. ALLF:  Nancy Allf appearing on
24   behalf Harmonix, and with me is Richard Ziegler
25   from Jenner and Block in New York.
```

1          THE COURT:  All right, thank you.  How
2  are you, sir?
3          MR. FEARS:  Good morning, your Honor.
4          THE COURT:  Good morning.
5          MR. FEARS:  Chad Fears for Microsoft.
6          THE COURT:  All right.
7          All right, I've reviewed the
8  file with my brain trust here.  Let me tell you
9  what I'm inclined to do and then I'll give
10  everybody a chance to argue.  This is the time
11  set for the hearing on plaintiff's motion to
12  strike and dismiss.  I don't think this is an
13  appropriate motion to strike because under 12(f),
14  of course, that's the strike in pertinent -- let
15  me get the exact language -- redundant,
16  immaterial, and pertinent or scandalous matter.
17          So I think I've treated this
18  more as a motion to dismiss rather than a motion
19  to strike, but then additional material has been
20  submitted so I've treated it as a motion for
21  summary judgment.  Of course, looking at it as a
22  motion to dismiss, the pleader is entitled to
23  have all the inferences drawn in its favor, and
24  the Court has to accept all those allegations as
25  true.  Pleading as a motion for summary judgment,

```
1    then 1st Media must show that there are no

2    genuine issues of material fact and that you're

3    entitled to judgement as a matter of law.

4                    First of all, dealing with the

5    affirmative defense and counterclaim not being

6    sufficiently pled, I think they are sufficient

7    pled.  Sony's amended answer outlines the number

8    of patent applications submitted by Lewis that

9    were reviewed and were rejected either during --

10   prior to or during the pendency of this

11   application and also lists several references

12   that were not disclosed by 1st Media.  So it puts

13   1st Media on notice first of all, and it also

14   describes in detail the basis for the allegations

15   that were made.

16                    This case seems to me to turn on

17   issues of fact, some of which are intent.  I mean

18   intent first of all comes out and I think is

19   really going to be a linchpin here.  And intent,

20   as the courts know, direct evidence of intent is

21   rare and a court often must infer intent from

22   surrounding circumstances, but intent also is

23   almost always a question of fact.  What did the

24   parties intend here?  And so that precludes

25   summary judgment.
```

1              Now, Sony claims that 1st Media

2    through Mr. Lewis, Mr. Scott Lewis, intentionally

3    deceived the patent office by withholding

4    information that would be relevant and material,

5    that office's investigation of a pending patent

6    application, and that allegation with other facts

7    in the amended answer I think, as I say, satisfy

8    our pleading standards and whether information --

9    whether the allegedly withheld information was

10   material, I think is a question of fact relying

11   on Scanner Technologies Corporation versus ICOS

12   Vision Systems Corporation, 528 F.3d 1365 at

13   1374.  It's a 2008 case.

14              Of course, the question of

15   intent, the same case holds that intent is a

16   question of fact as well, and so I think that

17   there are questions of fact here dealing with

18   intent.  Are these materials that were withheld

19   supposedly material?  I think they're just too

20   many questions of fact that precludes summary

21   judgment.  So based on that, I'm inclined to deny

22   the motion to strike and dismiss by 1st Media.

23   Now, it's your motion, Mr. Flashsbart (phonetic),

24   is that correct, sir?

25              MR. FLACHSBART:  Flaksbart (phonetic),

1    your Honor.

2            THE COURT:  Thank you.  Mr. Flachsbart,

3    it's your motion so I'll give you a chance to

4    argue.

5            MR. FLACHSBART:  Okay, I'll be brief.

6    (Reading.)  I'm just going to eliminate a few

7    things.

8            THE COURT:  Yes, sir.  You don't know

9    me, but I try to give you a flavor of what

10   concerns the Court has rather than saying, okay,

11   argue away and then we'll just sit here.  And I

12   know, I know, what the standard is, yeah, I know

13   what Rule 56 is, yeah, I know, I know, I know.

14   Oh, now, oh, wait, now you're to the interesting

15   part so --

16           MR. FLACHSBART:  I completely

17   understand, your Honor, so what I'm going to do

18   is I'm just going to surf to the interesting

19   part.

20           THE COURT:  Absolutely.

21           MR. FLACHSBART:  I was going to talk a

22   little bit about the background of the case and

23   the patent, but I think we can dispense with

24   that.

25           THE COURT:  Yeah, does everybody

1    understand?  Is there anybody who doesn't

2    understand how the patent process works?  Hold up

3    your hand.  No hands?  Okay, go ahead.

4           MR. FLACHSBART:  So the only thing I

5    would like to focus on, your Honor, then is just

6    the Bell Atlantic case.  I won't waste the

7    Court's time with anything else.

8           THE COURT:  Okay, and let me just say I

9    don't know what the merits of this are.  I mean

10   I'm not considering the merits and saying, oh, I

11   think that 1st Media did this or Sony did that.

12   I have no idea what the merits are.  So I'm just

13   looking at this, here's a pleading and it's

14   almost in a vacuum, but now go ahead.

15           MR. FLACHSBART:  I completely

16   understand that, your Honor, and that's why I

17   think I'll just focus on the Bell Atlantic.

18           THE COURT:  Good.

19           MR. FLACHSBART:  The reason that we

20   filed this motion is because of this emerging

21   standard that has come out of Bell Atlantic.

22   Some people call it Twombly, I'm going to call it

23   Bell Atlantic just that's my inclination.

24           THE COURT:  That's fine.

25           MR. FLACHSBART:  The Supreme Court is

```
 1    sending this message to all of us that Rule 8 and
 2    Rule 9 have teeth, that you can't just plead and
 3    say particularly when you have a fraud type of
 4    pleading like we do here.  You can't just plead
 5    intent and call it a day.  You have to actually
 6    have some facts that support that.  If we look --
 7    what struck me a lot while preparing for this
 8    argument was how similar in some respects,
 9    although the facts are not patent facts, the Bell
10    Atlantic case was to the instant case.  In Bell
11    Atlantic we had a group of ILEX write these phone
12    companies that acted in concert apparently.  In
13    other words, they all did sort of the same
14    prices.
15              THE COURT:  That's right.
16              MR. FLACHSBART:  And the plaintiff in
17    that case said, look, they all did the same
18    pricing.  That leads me to conclude that they had
19    intent to do so.  And so they must have been
20    acting in concert, therefore, we're going to sue
21    them under the appropriate statute, right, the
22    Beta One Statute.  So in this case what do we
23    have?  None of us -- I think the facts are
24    actually relatively agreed and as they are pled.
25    We have simultaneous pending patent prosecutions.
```

1    I have cited in some of the patents and not in

2    others, and then we have art that's identified to

3    the patentee if he didn't carry over to other

4    patents.

5                   And from that fact -- from those

6    facts standing alone, Sony concludes intent, that

7    there was intent to deceive, that just because

8    they didn't carry them over, there's an intent.

9    What's curious to me is that's a lot like the

10   Bell Atlantic case.  You've got some facts that

11   can be seen in the negative light, but don't

12   necessarily connote fraud, don't necessarily

13   connote any intent.  We don't have any fact

14   that's pled that leads us to conclude that either

15   Dr. Lewis or Mr. Sawyer concluded at any time

16   that any of these references were material,

17   whether they then made the next step and formed

18   the intent to deceive by holding those back.

19                   All we have is, look, it makes

20   sense in context.  It's not inconsistent with

21   what happened that they could have formed the

22   requisite intent, but what the court said in Bell

23   Atlantic was that merely suggestive of conspiracy

24   wasn't enough, that the fact that you could tell

25   a bad story from the facts that you had without

1   being inconsistent wasn't sufficient because they

2   were equally plausible, if not more plausible,

3   non-damning explanations.

4                        With respect to the ILEX, the

5   non-damning explanation was that they just did

6   what came naturally to them as companies, right,

7   that they sat because they were afraid of moving

8   because that would hurt them in the competitive

9   sphere.  With Mr. Sawyer and Dr. Lewis there's an

10  equally compelling innocent explanation which is

11  that they thought of these different examinations

12  as completely different patents.

13                       Now, we go into that at length

14  in our brief, and I'm certainly ready to talk

15  about it, but I think I can simply say if you

16  looked at nothing else, I'd like to have the

17  Court or its brain trust take a look at our

18  Exhibit S which is, you know, the comparison of

19  the claims that were alleged to be substantially

20  similar.  So absent that intent, absent some

21  crystallizing fact that they have that says,

22  look, these guys chose to do bad things, we just

23  feel that under Bell Atlantic, they don't reach

24  the requirement that they crossed this line from

25  near plausibility into plausibility, and so we

```
 1   tie those -- I mean that's why we're here.
 2           THE COURT:  Okay.
 3           MR. FLACHSBART:  If it weren't for Bell
 4   Atlantic, we wouldn't be here because we agree
 5   with your Honor in a lot of respects, and I
 6   understand it's going to be hard to change your
 7   mind, so I'm not going to waste a lot of time
 8   doing it, but I wanted to point to that
 9   particular parallel because I think it's that
10   parallel that really brings problems for Sony's
11   pleading and injects this very fraught issue into
12   what's otherwise, you know, a fairly basic patent
13   litigation.
14           THE COURT:  All right.
15           MR. FLACHSBART:  And with that, your
16   Honor, I'll conclude.
17           THE COURT:  All right.  Thank you.
18                How about on the defense side?
19   Is it Mr. Buresh?
20           MR. BURESH:  It is Mr. Buresh, your
21   Honor.
22           THE COURT:  Thank you.
23           MR. BURESH:  Thank you.  I'm obviously
24   not going to go through a full presentation at
25   this point.
```

1          THE COURT:  Sure, that's fine.  And, of

2    course, I want to hear your response primarily to

3    Mr. Flachsbart's argument.

4          MR. BURESH:  Absolutely.  The

5    defendants' response to that argument is that

6    Bell Atlantic versus Twombly did not change the

7    pleading standards.  It did not change the

8    requirements that certain sets of facts be pled

9    according to a notice pleading standard and other

10   sets of facts, such as those encapsulated fraud

11   pleading are pled with particularity.  It didn't

12   change that.  And 1st Media is not attacking

13   Sony's pleadings as a motion to dismiss.  They

14   are not attacking the sufficiency of the facts

15   we've pled.  They are taking the next step and

16   saying, look, it's not plausible.

17               Bell Atlantic versus Twombly did

18   not instruct trial courts to take away a party's

19   right to discovery.  They did not instruct courts

20   to take away a party's right to formulate and

21   fully articulate a claim.  The purpose of a

22   pleading is not to articulate the legal theories

23   of the claim.  The purpose of a pleading is to

24   articulate facts to put the other party on notice

25   such that they can formulate a defense.  Sony's

1    pleading absolutely provided adequate notice for

2    formulate a defense.  You see there 1st Media

3    providing a formulation.  It's an incorrect

4    formulation, but it's a formulation of a defense

5    nonetheless.

6                     The pleading standards are met.

7    Once you're to the plausibility issue, again I'm

8    going to refer you simply to slide 3, which the

9    Court alluded to in its opening, materiality, a

10   question of fact.  Cumulativeness which was a big

11   argument, and cumulativeness just means the stuff

12   that the patentee didn't disclose was already

13   before the patent office in another form.  Again,

14   question of fact, it goes to the scope and

15   content both of what wasn't disclosed and what

16   was already before the patent office.  So it's a

17   question of fact, intent, as you alluded to, a

18   question of fact.

19                     Now, Mr. Flachsbart alluded to,

20   and I believe focused, on the intent pleading and

21   said all Sony did was say there was a failure to

22   disclose and, therefore, there was intent.  That

23   is far from the truth.  What Sony did was plead a

24   consistent pattern of nondisclosure to the United

25   States Patent Office by either Dr. Lewis or the

1   agents that were working for Dr. Lewis.  Just

2   briefly I want to give you kind of an atmospheric

3   picture of what occurred, and I was thinking on

4   the flight out here for people that don't

5   prosecute patents, what's a real world

6   explanation for what's going on.

7                  My frame of reference is I have

8   four boys at home back in Kansas City.  I raise

9   those four boys with my wife.  One of the core

10  things we try to teach our kids is honesty as all

11  parents try to teach their kids.  And honesty is

12  more than tricks.  It's more than the punch line

13  that people have made it in jokes nowadays.  It

14  is legitimate honesty is more than

15  technicalities.  It's more than only telling what

16  you have to tell, but not telling the other part

17  that's really relevant.

18                  When I raise my boys, I say --

19  you know, they come and ask me a question, Dad,

20  can I ride my bike down the street?  I say no.

21  If my boy then goes to my wife and says, Mom, can

22  I can I ride my bike down the street?  And she

23  happens to say yes, he just lied.  He committed

24  in patent terms inequitable conduct.  Why?

25  Because he didn't tell his mother that his dad

1   already said no.  And if you take it a step

2   further, if mom says no, and he goes to grandad,

3   and grandad says, I don't care what you do, I'm

4   your grandad, go ride your bike.  He's really

5   lied.  He's not only not told him that mom said

6   no and dad said no, he's now misleading his

7   grandfather.

8                    That in a practical term is what

9   we have here and that's what Sony has pled.  I'm

10  sure you've reviewed the case of McKesson which

11  we talk about a lot in the pleadings.  McKesson

12  stood for the simple holding that if you have

13  substantially similar claims in co-pending

14  applications, what does co-pending mean?  Quite

15  simply, it's pending at the same time at the

16  patent office.  If you have claims that are

17  substantially similar and they're rejected in

18  application A, application B, and then not

19  rejected in application C, you have to tell the

20  examiner in C what's going on in A and B.

21  Examiner C would want to know.

22                    Materiality, what is

23  materiality?  Is it anticipation?  Does it mean

24  that every piece of a claim limitation has to be

25  in the reference?  No.  Materiality is simply

```
 1   information that a reasonable examiner would
 2   consider important.  Would Examiner C want to
 3   know what A and B were doing?  Absolutely.  Let's
 4   first meet his response to that.  They say, and
 5   Mr. Flachsbart referenced this Exhibit S to show
 6   that the claims are purportedly dissimilar.
 7                I would refer the Court to the
 8   slide number 7 of Sony's presentation.  These
 9   were the claims that were being compared by the
10   federal circuit in McKesson.  These were the
11   claims that were found to be sufficiently similar
12   such that the rejections in the McKesson claim on
13   the left-hand side were relevant to the other
14   claim on the right-hand side, and if you look at
15   this, your Honor, there is several words that
16   overlap.  There's system computer means that
17   overlaps if you turn the page with central
18   computer system.  There's bay station means that
19   overlaps back on page 7 to bay station means.
20   That's the overlap.
21                Now, if you flip to page 9, this
22   is an example, one example, we've pled several,
23   but this is one of the examples of the asserted
24   claim in this case on the left-hand column, and a
25   co-pending application claim on the right-hand
```

1    column.  You'll see an interactive multimedia

2    answering system, same element.  I'm not going to

3    bore you with this.  The claims clearly have far

4    more overlap than the claims in McKesson, and

5    with those types of overlapping claims preceding

6    through the patent office simultaneously, here's

7    what's happening.

8                    You have a broad claim that

9    starts out in application A.  Examiner A says

10   here's prior art, here's prior art, narrow that

11   claim down.  And this is the claim you're left

12   with in A.  The same thing is happening in B with

13   different prior art, the narrow claim at the end

14   of the day.  And then we have application C

15   plugging along, prior art from A and B not cited,

16   rejections from A and B not cited.  You have

17   multiple filings covering substantially similar

18   material, and Lewis or his agents, whoever is

19   responsible for this, did not tell the examiner

20   what was going on.  And without a doubt, that

21   examiner would have wanted to know.  That's what

22   Sony pled and that's why the motion should be

23   denied.

24                    I would raise one more issue

25   which is in respect to the parties' joint

1  submission of a case management report which I

2  know doesn't go to your Honor but to the

3  magistrate, but we have asked in -- the

4  defendants have asked in the case management

5  report that we be permitted to take limited

6  special discovery on the issue of inequitable

7  conduct such that after we take that discovery,

8  we are enabled to present to the Court in an

9  appropriate dispositive fashion a resolution of

10  this case through the inequitable conduct claim.

11           This is not a trivial

12  inequitable conduct pleading.  This is

13  significant conduct that occurred over a period

14  of time with a pattern that clearly evidences the

15  intent that Mr. Flachsbart so trivializes.  At

16  the end of the day if we can resolve this case

17  through inequitable conduct, we avoid the rigors

18  of the standard patent case.  If we can present

19  that to the Court early, we avoid a lot of the

20  hassles that are coming down the pike, claim

21  construction, discovery disputes, that type of

22  thing.

23           So we are asking for very

24  limited relief in the form of depositions of the

25  inventor and the prosecuting attorney so we can

1    see what their explanations are and, therefore,

2    present it to the Court.  And I would just

3    highlight to the Court that there's an issue

4    because this motion was filed, and we didn't

5    anticipate this motion being filed, we submitted

6    the joint case plan that provided a proposed date

7    for those depositions to take place.  Those are

8    passed already, or rather they approaching

9    passed.  So I would simply note to the Court that

10   if you consult with the magistrate judge, to

11   alert him to that issue as well.

12                    Thank you very much.

13            THE COURT:  Yes, sir.  The magistrate

14   judges get their feelings hurt if I try to step

15   on their toes.  So let me put the burden on

16   counsel to raise this issue before the magistrate

17   judge.

18                    Anybody else from the defense

19   side want to be heard on this?  All right, Mr.

20   Flachsbart, I'll give you the -- it's your

21   motion, I'll give you the last bite.

22            MR. FLACHSBART:  How about one minute?

23            THE COURT:  Yes, sir.

24            MR. FLACHSBART:  I won't spend more

25   than that.  Sony consistently relies on -- and

1  this is with respect to the McKesson -- Sony

2  consistently relies on McKesson for this

3  principle that McKesson -- the McKesson court

4  found that the claims are substantially similar,

5  but that just never happened in McKesson.  In

6  McKesson where they cite the substantially

7  similar language there, they're only restating

8  the district court's opinion.  They weren't

9  actually adopting it and they never did adopt it.

10            The reason in the end that in

11  McKesson they were found to have possibly

12  committed inequitable conduct was that the other

13  prosecution was material because the claims show

14  the key feature patentability, okay?  In other

15  words, it's not like our case where they're using

16  different features to argue patentability.  In

17  the McKesson case using the same feature to argue

18  patentability in multiple cases and then

19  concluding that that gives rise to a potential

20  inequitable conduct by referring to rejections

21  from one claim over the other.  So I think we

22  need to be precise about where we are when we're

23  talking about McKesson.

24            With respect to the discovery

25  plan, I mean obviously we think the discovery

```
 1   plan should be taken up on its own because it
 2   doesn't really have anything to do with where we
 3   are today.  I have found historically that
 4   frequently defendants feel like, well, if we just
 5   did discovery on the defense, we might then be
 6   able to get rid of this whole case.  That's
 7   pretty much true of every defense regardless of
 8   how well pled or not well pled.  So I certainly
 9   think it's a mistake.  I think we'll take it up
10   as you suggest with the magistrate judge.
11             THE COURT:  All right.
12             MR. FLACHSBART:  Other than that, your
13   Honor, I'm prepared to conclude.
14             THE COURT:  All right, thank you.  And
15   do you want make this part of the record?  I can
16   if you want to.
17             MR. BURESH:  I don't believe it's
18   necessary, your Honor.
19             THE COURT:  All right, and I'm
20   referring to the presentation.
21             MR. FLACHSBART:  We object, your Honor,
22   we've never been given --
23             THE COURT:  And I understand and it
24   would be just for what it's worth.  I want to
25   give the parties a chance to put everything they
```

1   want to on the record.  So rather than having --

2        MR. BURESH:  If he's going to object to

3   it, I don't believe it's necessary to put it on

4   the record.

5        THE COURT:  All right, thank you then,

6   but I --

7        MR. FLACHSBART:  We obviously have no

8   trouble with your Honor referring to it.

9        THE COURT:  I understand, I understand.

10  So I won't make it a part of the record then,

11  that's fine.  But I'm inclined -- I'm still

12  inclined to deny the motion.  There's issues here

13  that I think need to be fleshed out with

14  discovery, and I think that the intent is as the

15  courts hold is something that very often you must

16  infer, and it's -- it's -- I can infer it or not

17  here, but I just think it's improper for me to

18  try and infer it or try to infer its absence.  I

19  think the defendants have pleaded enough, that

20  Sony has pleaded enough to defeat a motion to

21  dismiss or for summary judgment, and so I'm going

22  to go with my inclination and deny the motion to

23  strike and dismiss inequitable conduct

24  allegations.  So, Mr. Allen, let me put the

25  burden on you to prepare an appropriate order to

1   that effect.

2           MR. ALLEN:  Sure.

3           THE COURT:  Now, as far as the

4   discovery, take that up with the magistrate judge

5   and I have no problem with expedited discovery or

6   something like that if the parties can agree on

7   it.  If you can't, then again take it up with the

8   magistrate judge and see what he or she says.

9   This looks like it's Judge Johnston, so whatever

10  he says, and then any issues that need to come up

11  here, I can deal with them as well, all right?

12          MR. FLACHSBART:  Just one point, your

13  Honor.

14          THE COURT:  Yes, sir.

15          MR. FLACHSBART:  Obviously if we're

16  treating this as a motion for summary judgment,

17  we may file another one.

18          THE COURT:  Oh, absolutely, absolutely.

19  No, this is not I've cut off your right to file

20  another motion for summary judgment.  No, it's

21  simply -- it's really a motion to dismiss and we

22  treat it under a different standard because you

23  file additional material.  I mean that's the way

24  I construe it.  So I don't construe it as now

25  you've got to come back with a motion to

1    reconsider and let's be realistic.  You know, six

2    months from now this case is going to be in a

3    totally different posture because, oh, witness X

4    said this, you know, witness A said that.  Oh,

5    that changes this, and now we respond this way.

6    And so I mean the case is going to be totally

7    different in six months.

8              MR. FLACHSBART:  Absolutely, your

9    Honor.  Thank you.

10              THE COURT:  Yes, sir, thank you.  It's

11    simply -- the way I do it is simply a different

12    standard because you filed additional material,

13    that's all it is.

14                   All right, thank you, Gentlemen,

15    we will be in recess -- and Ms. Allf.

16         (Whereupon, the proceedings concluded.)

17

18                   I hereby certify that pursuant
     to Section 753, Title 28, United States Code, the
19    foregoing is a true and correct transcript of the
     stenographically reported proceedings held in the
20    above-entitled matter.

21

22    Date:  May 28, 2010              /s/ Joy Garner
                                       JOY GARNER, CCR 275
23                                     U.S. Court Reporter

24

25

─────── JOY GARNER, CCR 275 ───────
LAS VEGAS, NEVADA  (702)384-3188